**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

BENJAMÍN MORALES-BENÍTEZ

    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 20-1518 (MEL)

**OPINION AND ORDER**

## I.    Procedural and Factual Background

Pending before the court is Mr. Benjamín Morales Benítez's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 18. On March 29, 2017, Plaintiff filed an application for Social Security benefits alleging that he initially became unable to work due to disability on April 1, 2016 ("the onset date"). Tr. 21. Prior to the onset date, Plaintiff worked as a "meat cutter," "stock clerk," and "maintenance supervisor." Tr. 30. Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018 ("the date last insured"). Tr. 21. Plaintiff's disability claim was denied on August 3, 2017 and upon subsequent reconsideration on June 27, 2018. Tr. 21.

Thereafter, Plaintiff requested a hearing which was held on June 28, 2019 before Administrative Law Judge Judith Torres ("the ALJ"). Tr. 21, 33. On August 26, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 33. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial

review. Tr. 1–5. Plaintiff filed a complaint on October 2, 2020. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 18, 22.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step

two requires the ALJ to determine whether plaintiff has "a severe medically determinable

physical or mental impairment" or severe combination of impairments. 20 C.F.R.

§ 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's

impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found

to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether

plaintiff's impairment or impairments prevent him from doing the type of work he has done in

the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in

the case record to determine the most the individual can do in a work setting despite the

limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This

finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ

concludes that plaintiff's impairment or impairments prevent him from performing his past

relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether

plaintiff's RFC, combined with his age, education, and work experience, allows him to perform

any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then

disability benefits are denied. 20 C.F.R. § 404.1520(g).

**C. The ALJ's Decision**

In the case at hand, the ALJ found that Plaintiff met the insured status requirement of the

Social Security Act through March 31, 2018. Tr. 23. At step one of the sequential evaluation

process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from April 1,

2016 through March 31, 2018. Tr. 23. At step two, the ALJ determined that Plaintiff had the

following severe impairments: degenerative disc disease of the lumbosacral spine; lumbar spine

spondylosis with mild stenosis; lumbar spine herniated discs with moderate stenosis; obesity; and

major, severe, recurrent depressive disorder with psychosis. Tr. 23. At step three, the ALJ found

that Plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1. Tr. 23. Next, the ALJ determined that during the relevant period:

> [Plaintiff possessed] the residual functional capacity to perform sedentary
> work . . . except he: could lift, carry, push and/or pull 10 pounds occasionally and
> less than 10 pounds frequently. The claimant could sit for 6 hours, during an
> eight-hour workday, alternating to standing for 3 minutes after every hour of
> sitting. He could stand for 2 hours, during an eight-hour workday, alternating to
> sitting for 3 minutes after every 30 minutes of standing. He could walk for two
> hours. He could occasionally climb stairs and ramps; but never climb scaffolds,
> ladders or ropes. The claimant could occasionally balance and stoop; but never
> kneel, crouch and crawl. He could never work at unprotected heights. The
> claimant could occasionally work around moving mechanical parts and operate a
> motor vehicle. He had to use a cane in all terrain . . . [T]he claimant's capacity to
> understand, remember and carryout instructions was limited to performing simple,
> routine and repetitive tasks. Use of judgment and dealing with changes in work
> setting were limited to simple work-related decisions. The claimant was able to
> interact with supervisors and coworkers frequently; and with the public
> occasionally.

Tr. 25. At step four, the ALJ determined that during the relevant period, Plaintiff could

not perform his past relevant work as a meat cutter, stock clerk, or maintenance

supervisor. Tr. 30. At step five, the ALJ presented Plaintiff's RFC limitations, as well as

his age, education, and work experience to a vocational expert. Tr. 31. The vocational

expert testified that a hypothetical individual with a similar RFC would be able to

perform the following representative occupations: document preparer, lens inserter, and

addresser. Tr. 32. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled during the relevant period. Tr. 32.

## III.   Legal Analysis

Plaintiff objects to the ALJ's denial of disability benefits on three grounds: (1) That at step 3 the ALJ erred in finding that Plaintiff did not qualify for a listed impairment, (2) that the ALJ's RFC determination was erroneous; and (3) that at step 5 the ALJ erred because the vocational expert testified that no jobs were available to Plaintiff in the national economy.

### A.  The ALJ's Step Three Determination

Plaintiff claims that the ALJ erred at step three of the sequential process by not finding that Plaintiff met or equaled the criteria of listings 12.04 or 1.04. ECF No. 18 at 3, 8, 16. At step three, the claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(d); Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793 (1st Cir. 1987) ("[t]he burden to demonstrate the existence of such a [listed] impairment rests with the claimant."). To meet the criteria of a listing, the claimant's impairment must satisfy all the duration and objective medical requirements. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. § 404.1525(c)(3).

### a.  Listed Impairment 12.04B

Plaintiff argues that the ALJ erred in not finding that Plaintiff qualified for a depressive disorder listing under 12.04B. ECF No. 18 at 8. Listing 12.04 pertains to depressive, bipolar, and related disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04. To fall under listing

12.04, a claimant must first show medical documentation of a depressive disorder or bipolar disorder (the paragraph 12.04A requirement) and must also satisfy either paragraph B or paragraph C of listing 12.04. Id. Paragraph B of Listing 12.04 requires that the claimant demonstrate an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning": (1) Understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04B. Under Paragraph B, an extreme limitation means the claimant is unable to function independently, appropriately, effectively, and on a sustained basis in the pertinent area. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.00F2e. A marked limitation means that the claimant's functioning in the area "independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.00F2d. The ALJ found that Plaintiff's limitations in all four of the Paragraph B mental functioning areas were "moderate." Tr. 24. A moderate limitation occurs when the claimant's functioning is "fair" in the pertinent area. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.00F2c.

### 1.   Understanding, remembering, or applying information

Plaintiff argues that the ALJ erred in finding that the Plaintiff was only moderately limited in the area of understanding, remembering, or applying information because the ALJ based her opinion on the fact that the Plaintiff could "prepare simple meals and drive short distances." ECF No. 18 at 8–9 (citing Tr. 24). In making that determination, the ALJ ignored considerable and more recent evidence that the Plaintiff could not drive. ECF No 18 at 9. The ALJ's opinion merely asserts that Plaintiff could "drive short distances" based on Plaintiff's March 2017 function report. Tr. 24, 52, 457. However, at his June 2017 examination with

consultative psychiatric examiner Dr. Pedro González Vega, Plaintiff reported that he had stopped being able to drive two months prior. Tr. 103, 541. At the June 2019 hearing Plaintiff also testified that at that time he could no longer drive even short distances. Tr. 224. Here, the court cannot find the ALJ's finding conclusive when she ignored more recent evidence that Plaintiff could no longer drive. This evidence indicates that his ability to understand, remember, and apply information may have been worsening after his initial statements in March 2017. Although the ALJ also considered that Plaintiff only complained of general difficulty remembering and could cook simple meals (Tr. 24, 51, 456), the court cannot find the ALJ's determination conclusive because the ALJ erred when she ignored Plaintiff's testimony and other evidence that he could no longer drive.

Even so, the ALJ's finding was harmless error. Upon a finding that the ALJ erred, the court will not reverse the error if it was "harmless," meaning that the ALJ's error would not have been outcome determinative. See Colón v. Saul, 463 F. Supp. 3d 66, 75 (D. Mass. 2020) (citing Perez Torres v. Secretary of Health and Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989)). Here, even if the court does not take the ALJ's finding as conclusive, and assuming arguendo that Plaintiff's limitation was more than moderate, that finding still would not have changed that Plaintiff does not meet the requirements of a 12.04B listed impairment.

Plaintiff still cannot show he would have been markedly limited in two areas or extremely limited in one area. To support that he is more than moderately limited in understanding, remembering, or applying information, Plaintiff cites to his hearing testimony (Tr. 224) and a consultive examination where he could neither spell forwards nor backwards the word "mundo," could remember three objects "house, airplane, cup" out of five in an immediate memory test, and could remember one object, "house," out of five objects after five minutes in a

short-term memory test. Tr. 105, 543. Despite these results, the same consultative examiner concluded the Plaintiff only suffers from "slightly diminished recent term memory and long-term memory." Tr. 106, 544. Plaintiff offers no additional evidence that would suggest that he is unable to understand, remember, or apply information. He cannot therefore show that he is extremely limited in this area. Plaintiff very likely suffers a marked limitation in the first functional area, but does not suffer from an extreme limitation.

To qualify for listing 12.04B, Plaintiff bears the burden of showing a marked limitation in two of the areas of mental functioning. The ALJ should have found a marked limitation in the first functional area, but, as discussed below, Plaintiff fails to show another marked limitation in one of the remaining four areas of mental functioning. Consequently, he cannot meet his burden of showing he suffers marked limitations in two areas. In sum, although the ALJ erred and should have found a marked limitation in the first area, Plaintiff still cannot satisfy his burden under 12.04B.

### 2. Interacting with others

Plaintiff next contends that the ALJ erred in finding that Plaintiff was only moderately limited in the functional area of interacting with others. ECF No. 18 at 10–11. Plaintiff argues that the ALJ's finding that he could spend time with friends and family, attend church, and that he did not have problems socializing or getting along with others does not mean he could do the same in a work environment eight hours a day. ECF No. 18 at 11–12. Plaintiff has improperly flipped the burden.

It is not the ALJ's burden to disprove that Plaintiff is unable or is seriously limited in his ability to interact with others. Instead, it is Plaintiff's burden to show the requisite limitation, while the ALJ's finding must only be supported by substantial evidence. There is plenty of

evidence to justify the ALJ's determination here. The ALJ found that Plaintiff can spend time with friends and family, (Tr. 51, 459), reported having no problems socializing, and reported that he attends church. Tr. 103, 541. There is no reason to believe that these social skills, while admittedly in a different context, could not transfer to the workplace. The ALJ's finding that Plaintiff is only moderately limited in interacting with others is therefore supported by substantial evidence.

### 3.   Concentrating, persisting, or maintaining pace

Plaintiff argues that the ALJ erred in finding under the third functional area that Plaintiff is only moderately limited in his ability to concentrate, persist, or maintain pace. ECF No 18 at 13. The ALJ found that because Plaintiff spends "quite sometime during the day" watching TV, Plaintiff's limitation under the third functional area is only moderate. Tr. 24. Plaintiff argues that watching TV does not disprove that Plaintiff has a very limited capacity to concentrate, persist or maintain pace. ECF No. 18 at 13. Plaintiff again incorrectly flips the burden.

It is Plaintiff's burden to show an extreme or marked limitation for each of the specified medical criteria under a listing. The ALJ determined that watching TV for long periods, and sometimes falling asleep, does not demonstrate that Plaintiff's inability to concentrate, persist, or maintain pace is anything worse than fair. Tr. 24. The ALJ also discussed Plaintiff's general complaints of difficulty concentrating and following instructions. Tr. 24, 49, 454. For example, Plaintiff complained that if he were given written instructions he would have to have them available to read again, and must write down spoken instructions. Tr. 54, 459. Plaintiff also complained that he could only focus for thirty minutes because he was easily distracted. Tr. 54, 459. These limitations are not notably different from what a typical person would do to remember instructions, and Plaintiff offers no further evidence to show that his ability to concentrate,

persist, or maintain pace is more seriously limited. Hence, Plaintiff failed in his burden to convince the ALJ of a more severe limitation. Plaintiff also now fails to discredit the ALJ's finding that complaints of having to write down instructions or revisit instructions, getting distracted after 30 minutes, and spending time watching TV is substantial evidence of only a moderate limitation in the third functioning area.

### 4. Adapting or managing oneself

Finally, on the fourth functioning area concerning Plaintiff's ability to adapt or manage himself, Plaintiff argues that the ALJ erred in finding his limitation was only moderate. ECF No. 18 at 14. The ALJ did recognize that Plaintiff complains he becomes upset when his routine changes but noted that Plaintiff could handle his own personal hygiene. Tr. Tr. 55, 103, 460, 541. Plaintiff does not contest that he is able to dress himself, bathe, and manage his own personal hygiene. ECF No. 18 at 14. As such, Plaintiff fails to discredit the ALJ's finding based on substantial evidence that Plaintiff's ability to adapt or manage himself is nothing more than moderately limited.

In sum, there was substantial evidence in the record whereby the ALJ could reasonably conclude that Plaintiff failed to show either an extreme limitation in one area or a marked limitation in two areas under listing 12.04B. Thus, Plaintiff fails to show how he satisfies the requirements of listed impairment 12.04.

### b. Listed Impairment 1.04

Plaintiff also argues that the ALJ erred in not finding that Plaintiff met any one of the three criteria established under listing 1.04. Listing 1.04 concerns disorders of the spine. See Kilton v. Astrue, Civ. No. 11-292, 2012 WL 892924, at *2 (D. Me. Mar. 14, 2012). In order to

satisfy Listing 1.04, a claimant must demonstrate a disorder of the spine (such as degenerative disc disease) which compromises the nerve root or spinal cord, with:

> (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spinal motion, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or
>
> (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

See MacNeil v. Astrue, 908 F. Supp. 2d 259, 264-65 (D. Mass. 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 1.04).

Here, the ALJ found that Plaintiff suffers from degenerative disk disease. Tr. 23. Thus, Plaintiff contends that he should fall under paragraph A of listing 1.04, arguing that the ALJ improperly ignored evidence of motor loss in the record. ECF No. 18 at 17. Plaintiff refers to the report of consulting physical examiner Dr. Priscilla Mieses Llavat, who scored Plaintiff's motor strength as 5/5 in his right lower extremity and 4+/5 in his left lower extremity. ECF No. 18 at 17; Tr. 550. Plaintiff asserts that the 4+/5 score is incontrovertible evidence of motor loss that was improperly ignored. ECF No. 18 at 17. Plaintiff's argument does not hold water.

Examining Plaintiff's contention that there is some functional reduction in his left leg motor strength reveals other evidence that suggests that Plaintiff's motor strength was not even minimally reduced. Plaintiff's April 2017 clinical examination by Dr. Javier Rivera Zayas scored a 5/5 in the lower extremities. Tr. 80. Additionally, in Plaintiff's June 2019 hearing, when asked by Plaintiff's counsel why Plaintiff would not qualify for listing 1.04, medical expert

Dr. Francisco Jogler replied that there was no evidence motor strength reduction in Plaintiff's lower extremities. Tr. 234. Nor can Plaintiff identify clear evidence of sensory or reflex loss. The ALJ's decision, drawing from the expert testimony at the hearing and other evidence in the record, is based on substantial evidence to show Plaintiff does not qualify under listing 1.04A.

Additionally, Plaintiff asserts that he should qualify under paragraph C of listing 1.04 and argues that the ALJ erred in not recognizing his diagnosis of lumbar spinal stenosis resulting in pseudoclaudication. ECF No. 18 at 19. The record evidence to which Plaintiff refers does not clearly point to a positive diagnosis of the condition in listing 1.04C. See Tr. 658–61, 664. Nevertheless, assuming arguendo that Plaintiff has been correctly diagnosed with lumbar spinal stenosis resulting in pseudoclaudication, Plaintiff still must show an inability to ambulate effectively. Inability to ambulate effectively means an extreme limitation of the ability to walk; essentially, "an impairment that interferes seriously with the individual's ability to independently initiate, sustain, or complete activities." Wilkinson v. Comm'r of Soc. Sec., Civ. No. 18-13728, 2019 WL 7838630, at *17 (E.D. Mich. Nov. 14, 2019) (internal quotations omitted). Generally, this means that an individual cannot independently walk without the use of "walkers, canes, or crutches" and "the need for the assistive device limits the use of both upper extremities." Id. (emphasis added); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 1.00C6d. A claimant who uses a hand-held assistive device must show "evidence from a medical source describing how [the claimant] walk[s] with the device." Id.

There is evidence in the record, and the ALJ's RFC determination recognizes, that Plaintiff needs a cane to walk. However, Plaintiff himself testified in his hearing that he only uses the cane in his right hand. Tr. 223–24. Plaintiff offers no other evidence in the record from a medical source showing how Plaintiff uses the cane and how it limits the use of both of his upper

extremities. Accordingly, even assuming arguendo that Plaintiff was diagnosed with spinal stenosis resulting in pseudoclaudication, Plaintiff nevertheless fails in his burden to demonstrate that he qualifies under listing 1.04C. In sum, Plaintiff fails to demonstrate that he suffers from a listed impairment under paragraphs A, B,[1] or C of listing 1.04. In so finding, the ALJ's decision was supported by substantial evidence.

### B. The ALJ's RFC Determination

Plaintiff also submits that even if Plaintiff's conditions do not qualify for a listed impairment, the ALJ's RFC determination of Plaintiff's mental and physical impairments was not supported by substantial evidence. See ECF No. 18 at 1–6. When formulating a claimant's RFC, the ALJ must base his determination on all relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of his limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most he can do despite limitations from his impairments. Id. The claimant bears the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

### 1. The ALJ's Mental RFC Determination

Plaintiff claims that even without qualifying for listing 12.04 for his depressive disorder, Plaintiff suffers from more severe limitations than those recognized in the RFC. ECF No. 18 at 1–2. In making the mental RFC determination, Plaintiff alleges the ALJ omitted critical facts, mischaracterized medical evidence, and impermissibly relied on her own medical conclusions.

---

[1] Plaintiff does not dispute, nor does he offer record evidence that he suffers from spinal arachnoiditis as required by listing 1.04B. ECF No. 18 at 18 ("[T]he record does not support a 1.04 B listing . . .").

ECF No 18 at 3. Plaintiff's arguments are without merit. The ALJ's mental RFC determination is supported by substantial evidence.

The ALJ discussed Plaintiff's evaluation in March 2017 at First Health Systems, where his initial evaluation resulted in a finding of diminished remote memory, poor concentration, insight, and judgment. Tr. 75–77, 512–15. The ALJ also notes that in April 2017, Plaintiff was admitted to a partial hospitalization program after suffering sadness, frequent crying, insomnia, anxiety, and auditory hallucinations. Tr. 70, 508. Although the medical record shows Plaintiff benefitted and improved greatly from the April 2017 program, his final visit with First Health Systems and Inspira found that he exhibited signs of sadness, anhedonia, anxiety, excessive worriedness, insomnia, depressive mood, blunted affect, and retarded psychomotor activity. Tr. Tr. 65, 503, 190, 667, 197, 675.  Nevertheless, Plaintiff was also cooperative, coherent, logical, relevant, possessing adequate attention and insight, oriented in four spheres, with no memory alteration. Tr. 197, 675. The ALJ also considered Plaintiff's descriptions of his depression, anxiety, limitations in memory, concentration, and following instructions. Tr. 26, 54, 459, 221–23.

Plaintiff cites nowhere in the ALJ opinion or record where the ALJ allegedly made her own medical or psychological evaluations. Far from forming her own medical opinions, the ALJ cites the psychological opinions of consultative examiner Dr. Pedro González Vega and independent medical expert Dr. Rosamari Peña. Tr. 28–29. Dr. González found in his examination that Plaintiff reported depressed mood and deficits in immediate, short-term, and recent memory. Tr. 104–05. Dr. González offered no opinion of Plaintiff's mental limitations but mentioned that Plaintiff's mental status was adequate and oriented with sufficient social judgment but some diminished memory, attention, and concentration levels. Tr. 106–07.

Dr. González also wrote that Plaintiff appeared to be able to go through basic daily activities, including self-hygiene, self-care, and medication. Tr. 106–07. The ALJ found Dr. González's assessment persuasive and consistent with the evidence in the record.

The ALJ also depended on Dr. Peña's testimony to formulate Plaintiff's mental functional capacity, because Dr. Peña relied and referenced the record in giving her opinion. Tr. 30, 229–30. This assessment included that Plaintiff would be able to perform simple, repetitive, routine tasks, and would be able to interact with the public occasionally and with coworkers and supervisors frequently. Tr. 230. Much of the ALJ's RFC determination was consistent with the testimony of Dr. Peña. Tr. 30, 229–30.

Plaintiff claims that the ALJ mischaracterized the evidence that led to Plaintiff's RFC assessment. ECF No. 18 at 3. However, the ALJ cites almost the same medical evidence as Plaintiff in his memorandum of law. Plaintiff does not provide any explanation or alternate interpretation of how the same evidence shows that Plaintiff's limitations were more severe or by how much. See ECF No. 18 at 3. Indeed, Plaintiff does not disagree with the ALJ's assessment that Plaintiff suffers from "major depressive disorder, severe, recurrent with psychosis." ECF No. 18 at 2 (citing Tr. 23). Far from offering evidence of mischaracterization, Plaintiff does not even explain why the ALJ's decision could reasonably have come out a different way—let alone why it was not supported by substantial evidence. Thus, the ALJ's mental RFC decision must be affirmed.

### 2.  The ALJ's Physical RFC Determination

Plaintiff also argues that the ALJ "underestimates" the physical limitations suffered by Plaintiff due to his medical conditions, and that the ALJ omitted critical evidence from the medical record, leading to an incorrect RFC determination. ECF No. 18 at 1–2, 6. Plaintiff's

argument cannot prosper. The ALJ's physical RFC determination is supported by substantial evidence.

First, the ALJ drew extensively from Plaintiff's medical record. She cites to a December 2016 imaging study by radiologist Dr. Luis Rodríguez López, an MRI taken in May 2017 by radiologist Dr. Ricardo Vallejo Rivera, and another MRI performed by radiologist Dr. Gabriela De La Vega Muns in September of 2018. Tr. 159–61. These doctors examined Plaintiff's spine and found evidence of muscular spasms, minimal spondylosis, suggestions of discogenic disease, straightening of the lumbar lordosis, vertebral hemangiomas, herniated and bulging disks, narrowing of the neural foramina, but no evidence of frank nerve root compression. Tr. 159–61.

The ALJ also discussed the functional limitations Plaintiff suffers according to the medical record. The ALJ discussed Plaintiff's April 2017 evaluation at Grupo Fisiátrico de Cidra, PSC. Tr. 27. Plaintiff was assessed with full motor strength in his upper and lower extremities, intact sensory functioning, and a negative straight leg test. Tr. 80, 518. In October 2017, examining physician Dr. Emil Pastrana Ramírez found that Plaintiff had normal muscle strength and normal reflexes. Tr. 662–64. The ALJ's RFC determination also recognized Plaintiff's obesity and considered the functional limitations that result from severe obesity and the combined effects it may have with other impairments. Tr. 26–27.

The ALJ relied to varying degrees on the medical opinions of consultative examiner Dr. Mieses and independent medical expert Dr. Jogler, Tr. 27, 29. Dr. Mieses physically examined Plaintiff, diagnosed him with lumbago secondary to spasms and degenerative disc disease. Tr. 550. Dr. Mieses also found that Plaintiff had a full range of motion in all major musculoskeletal groups except for the back, full or nearly full motor strength in the lower extremities, full hand strength and functionality, and could return a negative result on a straight

17

leg test. Tr. 549–55. As such, Dr. Mieses concluded that Plaintiff could do some heavy lifting, carrying, some pushing and pulling, and some prolonged standing and walking. Tr. 27–28.

Even so, the ALJ found Dr. Mieses conclusions unconvincing when compared to the testimony of Dr. Jogler. Tr. 28. Dr. Jogler, who is familiar with Social Security Policy, provided a detailed assessment of Plaintiff's functional capacity and based his opinion testimony on exhibits in the record. Tr. 231–34. Consequently, based on Dr. Jogler's testimony, the ALJ found that Plaintiff was not as capable as Dr. Mieses concluded, particularly finding that Plaintiff was more limited in heavy lifting, carrying, pushing, pulling, standing, and walking. Tr. 28.

In formulating the RFC, the ALJ also considered Plaintiff's hearing testimony and his objective complaints that he suffers from lower back pain irradiating to both legs, and is limited in his ability to lift, crouch, bend, stand, reach, walk, sit, kneel, and climb stairs. Tr. 26, 50–54, 455–59, 219–20, 223–26. She also explicitly recognized that Plaintiff requires a cane to walk. Tr. 25, 221–24.

Finally, the ALJ acknowledged the various medications and treatments prescribed to Plaintiff, including steroid injections and physical therapy. Tr. 116, 118, 567, 569. Of note, the ALJ found that Plaintiff's physical treatments were all conservative and did not require more advanced procedures like surgery or hospitalization. Tr. 28.

Despite all the above evidence, Plaintiff contends that the ALJ's RFC assessment of [Plaintiff's] physical and mental conditions are "wrong." ECF No. 18 at 2, 6. The court, however, must affirm the ALJ's decision if supported by substantial evidence, "even if the record arguably could justify a different conclusion." Rodríguez Pagán, 819 F.2d at 3. Here, The ALJ formed the RFC based on all relevant evidence in the record—medical records, expert and

doctor's opinions, treatments, and Plaintiff's own complaints and testimony. Hence, the ALJ's RFC determination was based on substantial evidence and must be affirmed.

### C.  The ALJ's Step Five Determination

Finally, Plaintiff asserts the ALJ erred at step five because, even using the RFC that the ALJ formulated, benefits must have been awarded to Plaintiff because the vocational expert ("VE") testified that no employment was available to Plaintiff. ECF No. 18 at 6. Plaintiff is mistaken.

At step five, the ALJ must "demonstrate that there are jobs in the national economy that [the] claimant can perform" before making a finding that the claimant is disabled. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir.1991). In evaluating whether a claimant can perform available jobs, the ALJ usually calls a vocational expert to whom is presented a hypothetical person with the claimant's RFC. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir.1982). Based on the hypothetical, the VE opines what jobs available in the national economy the hypothetical person with the claimant's RFC could perform. See id.

In arguing that the ALJ erred at step five, Plaintiff reiterated that he requires a cane to walk, as he testified at his hearing and as found in the ALJ's RFC. Tr. 25, 240. Based on that fact, Plaintiff cherry-picks a portion of his examination of the VE wherein Plaintiff's counsel asked:

> ATTY: And if the use of cane [sic] were necessary to stand and walk at all times?
> VE: Walk—
> ALJ: All terrains [CROSSTALK]
> ATTY: All terrains, all the time, exactly.
> VE: That is when it wouldn't— there wouldn't be any.
> ALJ: There wouldn't be any jobs in the national economy?
> VE: No.

Tr. 240–41. Plaintiff asserts that because the VE stated that there would be no jobs in the national economy during this exchange, the ALJ erred in finding that jobs existed in the national economy. ECF No. 18 at 21. Plaintiff's argument is wrong and taken out of context. The portion that Plaintiff cites was part of an expert opinion predicated on Plaintiff working a job where he be able to walk on "[a]ll terrains, all the time" with a cane. Tr. 240. Understandably, the VE responded that such a job does not exist. Tr. 240.

However, immediately prior to the exchange to which Plaintiff refers, Plaintiff's counsel asked the vocational expert:

> ATTY: If the use were limited to all terrains, the use of cane, the limitation was that one, that the person had to use a cane in all sorts of terrains, would there be jobs for a person with those kinds of limitations?
> . . .
> ALJ: Ah, not all terrains, all surfaces.
> VE: All surfaces, OK. He could, as long as— yes, at the sedentary level.
> ATTY: There would be jobs available?
> VE: The ones I had mentioned at the sedentary level, yes.

Tr. 240 (emphasis added). In this exchange, the VE testified that even a person who needed to walk with a cane could perform the sedentary jobs that were available to Plaintiff. All the jobs that the VE recommended—document preparer, lens inserter, and addresser—are rated as sedentary in the Dictionary of Occupational titles. Tr. 32. Accordingly, contrary to what Plaintiff argues, the VE clearly testified that even if Plaintiff needed a cane to walk on all terrains and surfaces, Plaintiff could still perform the identified sedentary jobs. Consequently, the VE did not testify that Plaintiff could not work any available jobs, and the ALJ therefore did not err in finding that other work was available to Plaintiff in significant numbers in the national economy.

**IV.    Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the

Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial

evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of October, 2021.

s/Marcos E. López
U.S. Magistrate Judge
